## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHARNINA SMITH, | ) | CASE NO. 3:24-CV-00327 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NEW NEIGHBORHOODS, INC. and | ) | September 10, 2025 |
| DOWNTOWN WEST GATE | ) | |
| APARTMENTS, L.P., | ) | |
| *Defendants*. | ) | |

## MEMORANDUM OF DECISION
## RE: MOTIONS TO DISMISS [ECF NOS. 35, 62]

Kari A. Dooley, United States District Judge:

*Pro se* Plaintiff Charnina Smith ("Plaintiff" or "Smith") filed this housing discrimination complaint against Defendants New Neighborhoods, Inc. ("NNI") and Downtown West Gate Apartments, L.P. ("Downtown") (together, "Defendants"), in which she alleges that the Defendants discriminated against her on the basis of her race, in connection with her commercial tenancy at 505 West Avenue, Bridgeport, Connecticut (the "Property"). The Amended Complaint alleges violations of Title II and Title VI of the Civil Rights Act, 42 U.S.C. §§ 2000a, 2000d *et seq.*; the Fair Housing Act (FHA), 42 U.S.C. § 3601 *et seq.*; and 42 U.S.C. §§ 1981 and 1982. Plaintiff also asserts claims arising under state-law and municipal code provisions. Defendants have separately moved to dismiss all counts of the Amended Complaint. Plaintiff opposes both motions. For the reasons that follow, the motions to dismiss are GRANTED in part.

**Standard of Review**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

**Allegations and Procedural History**

The Court accepts as true the allegations in the Amended Complaint, which are summarized as follows.[1] Plaintiff Charnina Smith is a business owner and resident of Fairfield, Connecticut. Am. Compl., ECF No. 18, ¶ 4. She is an African American woman. *Id.* ¶ 7. Downtown West Gate Apartments is a limited partnership that operates and owns property in Bridgeport, Connecticut. *Id.* ¶ 6. Among the properties it owns is the Property at 505 West Avenue, "a 61,552-square-foot, five-story mixed-use building which includes two ground-floor commercial spaces and four floors of residential apartments." Downtown Mem. of Law, ECF No. 63, at 2; *see also* Ex. A to NNI Mot. to Dismiss, ECF No. 36 ("License Agreement"), at 34. In 2021, the Bridgeport Neighborhood Trust ("BNT") was the managing agent for Downtown's properties. Downtown Mem. of Law at 3; License Agreement at 1. However, some time between

---

[1] "A *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Thus, "[a] court must liberally construe *pro se* pleadings and interpret them to raise the strongest arguments that they suggest." *Morgikian v. Fidelity Invs.*, No. 20-CV-5724 (JMA) (ARL), 2022 WL 836950, at *2 (E.D.N.Y. Mar. 21, 2022) (citing *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)).

2021 and 2023, New Neighborhoods, Inc. became the current managing agent for Downtown's properties. Downtown Mem. of Law at 3. The managing agents "handle[] the day-to-day operations of the property, including tenant relations, rent collection, and when necessary, eviction proceedings." *Id.*

On March 1, 2021, Smith entered a commercial license agreement with BNT (the "Agreement") for a portion of the ground floor of the Property. *See generally* License Agreement; *see* Am. Compl. ¶¶ 8, 10–11. Under the Agreement, Smith was required to pay a license fee of $1,356.67 per month to Defendants. License Agreement ¶ 2(c). Plaintiff alleges that because the Agreement was a license and not a lease, it was therefore "beneath" a lease and "contained unfavorable terms and conditions," when compared to other commercial leases on the Property. Am. Compl. ¶ 8. Smith opened a secondhand store, under the entity Thriftesta, LLC ("Thriftesta"), and shortly after opening, she "began occupying a second space located on the third floor of the same apartment building." *Id.* ¶¶ 11–12.

According to Defendants' complaint in the Superior Court, Smith failed to pay the required license fee beginning in May 2022.[2] Ex. B to NNI Mot. to Dismiss, ECF No. 36 ("Super. Ct. Compl."), ¶ 6. However, Plaintiff alleges that she and BNT had a "overall communicative relationship" during this time. Am. Compl. ¶ 14. Beginning in April 2023, Plaintiff alleges that Irma Ross, a woman who identified herself as a property manager for NNI, began visiting the Property. *Id.* ¶ 15. The Amended Complaint describes multiple visits by Ross to the Property. Plaintiff claims that Ross first told her that she needed to remove the padlocks from the occupied

---

[2] Defendants request that the Court take judicial notice of the summary process action, as well as the numerous appeals and removals initiated by Plaintiff in state court. NNI Mem. of Law, ECF No. 36, at 3 n.1. The Court has already taken judicial notice of the summary process action and the appeals of those decisions to the Appellate Court in the decision denying Plaintiff's motion for a temporary restraining order and preliminary injunction. *See* ECF No. 33. Therefore, the Court will continue to take judicial notice of these proceedings for the purposes of these motions to dismiss.

second space in the Property for a fire inspection, *id.* ¶¶ 15, 17, and then that Smith had to vacate the second space entirely, *id.* ¶ 19.  In June 2023, Ross alerted Smith to a discrepancy with her license fee payments.  *Id.* ¶ 22.  Then, in July 2023, Smith found a notice from the U.S. Postal Service for an attempted letter delivery, which she later learned was allegedly "in connection with a default letter Ross had an attorney send but [was] never received by plaintiff."  *Id.* ¶¶ 26–27. Throughout these interactions, Smith repeatedly asked for certain representations from Ross to be in writing, but Ross never complied.  *Id.* ¶¶ 19–20, 22–24.  Around this time, Smith also met with John Giovannucci, who the Amended Complaint identifies as Ross's supervisor, presumably at NNI, about the license fee payments.  *Id.* ¶¶ 29–30.  Giovannucci told Smith that they did not want her to leave the Property and that they "would work something out."  *Id.* ¶ 30.

On October 3, 2023, Defendants served Smith with a notice to quit for nonpayment of rent. *Id.* ¶ 32.  Smith tried consulting with Giovannucci and Ross, but negotiation attempts regarding the license fee were unsuccessful.  *Id.* ¶¶ 33–36.  Some time in October 2023, Plaintiff alleges that she met with Ross again about attempts to contact a director at BNT.  *Id.* ¶ 36.  Ross allegedly became angry and hostile in response to Smith's questioning, and Plaintiff alleges that "at some point [she] made some statement about a 'black' business."  *Id.*  On October 25, 2023, Giovannucci emailed Plaintiff with a written demand for over $24,000 in delinquent rent.  *Id.* ¶ 39.

On December 26, 2023, NNI, on behalf of Downtown, initiated eviction proceedings by filing a summary process action against both Smith and Thriftesta in Connecticut Superior Court. *See* Super Ct. Compl. ¶¶ 1–3; *see generally New Neighborhoods Inc. ex rel. Downtown West Gate Apartments, L.P. v. Thriftesta, LLC et al*, Case No. BPH-CV24-6014516 (Conn. Super. Ct.).  The Superior Court complaint alleges that Smith failed to pay the license fee due for the period of May

2022 to December 2023. Super Ct. Compl. ¶ 6. Defendants therefore sought $27,060.44 from Smith in arrears. *Id.*

On March 4, 2024, the Connecticut Superior Court entered a default judgment against both Smith and Thriftesta for commercial nonpayment of rent. Ex. C to NNI Mot. to Dismiss, ECF No. 36. Smith's attempts to reopen the default judgment were denied, and her appeal to the Appellate Court was also denied. *See New Neighborhoods Inc. v. Thriftesta, LLC et al*, Case No. AC 47354 (Conn. App. Ct.). Smith then turned to federal court. She improperly removed the summary process action to federal court three times. *See New Neighborhoods, Inc. v. Thrifteasta, LLC et al*, No. 3:24-cv-340 (KAD) (D. Conn.); *New Neighborhoods, Inc. v. Thrifteasta, LLC et al*, No. 3:24-cv-1022 (JAM) (D. Conn.). The Court remanded the action each time and further noted that any future attempts to remove the eviction action to federal court may result in sanctions. *New Neighborhoods, Inc. v. Thrifteasta, LLC et al*, No. 3:24-cv-1022 (JAM), ECF No. 9; *New Neighborhoods, Inc. v. Thrifteasta, LLC et al*, No. 3:24-cv-340 (KAD), ECF No. 15.

On January 8, 2025, a summary process execution was issued by the Superior Court. Ex. D to NNI Mot. to Dismiss, ECF No. 36. Smith filed numerous motions to quash, to stay the execution, and to disqualify the housing court judge hearing the case, which were all denied and appealed. NNI requested the imposition of an appellate bond, which the Superior Court granted following an evidentiary hearing. *New Neighborhoods Inc. ex rel. Downtown West Gate Apartments, L.P. v. Thriftesta, LLC et al*, Case No. BPH-CV24-6014516 (Conn. Super. Ct.), Entry Nos. 154.00, 159.00. Smith has since appealed that order as well as the Superior Court's many post-execution orders, which is currently pending before the Appellate Court. *New Neighborhoods Inc. v. Thriftesta, LLC et al*, Case No. AC 47656 (Conn. App. Ct.).

Plaintiff commenced this action on March 11, 2024.  The operative Amended Complaint was filed on May 22, 2024.  ECF No. 18.  NNI filed a motion to dismiss the Amended Complaint on February 18, 2025.  ECF No. 35.  Downtown filed a motion to dismiss on June 18, 2025.  ECF No. 62.  Plaintiff asserts 12 counts against the Defendants: under federal law, she asserts discrimination claims under Title II (Count 1), Title VI (Count 2), the FHA (Counts 3 and 4), §§ 1981 and 1982 (Count 5), and § 1983 (Count 6); under state law, she asserts discrimination claims under Conn. Gen. Stat. §§ 46a-58 and 46a-64 (Counts 7 and 8), housing claims under the Connecticut Housing Finance Authority Act (CHFAA), Conn. Gen. Stat. § 8-265c (Count 9), and the Connecticut Fair Housing Act (CFHA), Conn. Gen. Stat. § 46a-64b *et seq.* (Counts 10 and 11); and lastly, under municipal law, she asserts a discrimination claim under Bridgeport Municipal Code § 9.20 *et seq.* (Count 12).  Defendants separately moved to dismiss all claims against them on substantially similar grounds.  NNI Mot. to Dismiss, ECF No. 35; Downtown Mot. to Dismiss, ECF No. 62.  Plaintiff filed an opposition to NNI's motion to dismiss, Pl.'s Opp'n, ECF No. 48, but did not file an opposition to Downtown's motion to dismiss.  However, because the motions are substantially similar, the Court will accept her opposition as filed against both motions.

**Discussion**

I.    Counts 1 and 5: Discrimination in a Place of Public Accommodation, Contract, or Property (42 U.S.C. §§ 1981, 1982, and 2000a)

In Count 1, Plaintiff asserts a violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, for race discrimination in a place of public accommodation.  And in Count 5, she asserts violations of 42 U.S.C § 1981 and § 1982 based on race discrimination.  The Court analyzes these two counts together because "[t]he Second Circuit has indicated that § 2000a claims may be analyzed using the framework established for claims under 42 U.S.C. § 1981." *Am. Italian Women*

*for Greater New Haven v. City of New Haven*, No. 3:21-CV-1401 (JCH), 2022 WL 1912853, at *6 (D. Conn. June 3, 2022) (quotations omitted).[3]

Section 2000a guarantees full and equal access to "goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation" without discrimination or segregation of the basis of race.  42 U.S.C. § 2000a(a).  Similarly, § 1981 guarantees equal rights under the law to "make and enforce contracts" without discrimination based on race, 42 U.S.C. § 1981(a), while § 1982 guarantees equal rights to "inherit, purchase, lease, sell, hold, and convey real and personal property," 42 U.S.C. § 1982.  Claims under all of these statutes are analyzed using the *McDonnell Douglas* burden-shifting framework.  *Am. Italian Women*, 2022 WL 1912853, at *6.  Under the *McDonnell Douglas* test, plaintiff "bears the minimal burden of setting out a *prima facie* discrimination case," *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006), under which a plaintiff "must show that the defendant discriminated against h[er] on the basis of race, that the discrimination was intentional, and that the discrimination was a substantial or motivating factor for the defendant's actions." *Feacher v. Intercontinental Hotels Grp.*, 563 F. Supp. 2d 389, 401 (N.D.N.Y. 2008) (cleaned up) (quoting *Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001)).  At the pleading stage, the Second Circuit has noted that this is an "exceedingly low burden" for plaintiffs to meet.  *Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x 763, 770 (2d Cir. 2015).

Defendants argue that Plaintiff has not plausibly alleged that their actions were motivated by racial animus because her allegations in this regard are wholly conclusory.[4]  NNI Mem. of Law

---

[3] Similarly, § 1981 and § 1982 claims are analyzed under the same framework.  *See CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 448 (2008).

[4] Defendants also argue that Plaintiff's Title II claim fails because NNI does not operate a place of public accommodation.  NNI Mem. of Law at 11.  In support of that argument, they claim that courts have held that "commercial rental properties do not constitute places of public accommodation under Title II."  *Id.*  However, the case that they cite in support of that proposition, *Solomon v. Amazon.com, Inc.*, 838 F. App'x 638, 639 (2d Cir. 2021),

at 16.  Plaintiff disagrees, claiming that the Amended Complaint provides facts to show that NNI's and Downtown's actions were motivated by her race as an African American woman.  Pl.'s Opp'n at 5.  The Court agrees with Defendants.  While Plaintiff's burden may be exceedingly low, it is a burden of some measure nonetheless.

"To withstand 'a motion to dismiss, the plaintiff[s] must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent.'"  *Raymond v. City of New York*, 317 F. Supp. 3d 746, 761 (S.D.N.Y. 2018) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994)). "[D]iscriminatory intent can be shown by either direct evidence of discriminatory animus or circumstantial evidence of such animus, including by showing disparate treatment among similarly situated [persons]."  *Radwan v. Manuel*, 55 F.4th 101, 132 (2d Cir. 2022) (applying Title VII[5])). The Amended Complaint's allegations about racial discrimination are wholly conclusory.  For instance, Plaintiff summarily states that "Defendants treated plaintiff unfairly because of her race . . . and interfered with, intimidated, threatened, coerced and retaliated against plaintiff for exercising and enjoying her rights."  Am. Compl. ¶ 51.  Plaintiff repeatedly restates the elements of the causes of action, but she provides no factual allegations in support.  *E.g.*, *id.* ¶ 57 ("Plaintiff was subjected to discrimination based on her race, color, and national origin in violation of Title II of the Civil Rights Act of 1964 . . . .").  "[T]hese types of conclusory allegations of discrimination, unsupported by specific factual allegations, have been found insufficient to state a

---

does not support that proposition.  The Court assumes without deciding that the premises at issue in the case could be a place of public accommodation under the statute.

[5] Courts have long interpreted the substantive discrimination provisions in Title VI, Title VII, and Title IX in tandem with one another.  *See Vengalattore v. Cornell Univ.*, 36 F.4th 87, 102–03 (2d Cir. 2022) (summarizing framework under these provisions); *Othon v. Wesleyan Univ.*, 612 F. Supp. 3d 35, 48 (D. Conn. 2020); *see also Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 665 n.9 (2d Cir. 2012) ("Historically, the Supreme Court has applied parallel analyses to claims brought under Title IX and Title VI.").

claim under §§ 1981 and 1982," as well as Title II.  *Grimes v. Fremont General Corp.*, 785 F. Supp. 2d 269, 296–97 (S.D.N.Y. 2011) (collecting cases); *see also Traylor v. Hammond*, 94 F. Supp. 3d 203, 215 (D. Conn. 2015) (dismissing § 1983 claim because "[t]he naked assertion by [a] plaintiff that 'race was a motivating factor' without a fact-specific allegation of a causal link between defendant's conduct and the plaintiff's race is too conclusory to survive a motion to dismiss." (second alteration in original)).

Plaintiff offers two factual allegations regarding her race or personal characteristics. Plaintiff states that she is African American, *id.* ¶ 7, and Plaintiff alleges that Ross "made some [unspecified] statement about a 'black' business," while allegedly speaking to her in a hostile manner.  *Id.* ¶ 36.  But as the Second Circuit has oft stated, a plaintiff's membership in a minority group or protected class alone is not sufficient to create a plausible inference of intentional discrimination.  *See Ochei v. The Mary Manning Walsh Nursing Home Co.*, No. 10-CV-2548 (CM), 2011 WL 744738, at *3 (S.D.N.Y. Mar. 1, 2011) ("This is a variation on a common (and patently defective) pleading technique in cases brought under federal and local antidiscrimination statutes: 'I am (fill in the protected class of which the plaintiff is a member); something bad happened to me . . .; therefore the bad thing happened because I am (fill in the protected class).' As the Second Circuit and other courts of appeal have repeatedly stated, this is a false syllogism, one that does not support any inference of discrimination." (citing *Grillo v. N.Y.C. Transit Auth.*, 291 F.3d 231 (2d Cir. 2002))).  Plaintiff's allegation that Ross said something about a "black business" fares no better under this standard.  Plaintiff does not specify what Ross said about Black businesses, whether it was even a reference to Plaintiff's business, whether it was a negative comment, or whether it was in any fashion related to Ross's and NNI's relationship with Plaintiff. And "[i]n any event, such stray remarks, even if made by a decisionmaker, do not constitute

sufficient evidence to make out a case of [intentional] discrimination." *Shands v. Lakeland Cent. Sch. Dist.*, No. 15-CV-4260 (KMK), 2018 WL 3315738, at *15 (S.D.N.Y. July 5, 2018) (quotations omitted) (analyzing the ADEA); *see also Favourite v. 55 Halley St., Inc.*, 381 F. Supp. 3d 266, 281 (S.D.N.Y. 2019) ("[T]he Second Circuit has cautioned district courts to consider whether 'stray remarks' are 'too remote and oblique' in relation to the alleged adverse action." (quoting *Tomassi v. Insignia Fin. Grp.*, 478 F.3d 111, 115 (2d Cir. 2007))); *cf. Annabi v. N.Y. Univ.*, No. 22-CV-3795 (LJL), 2024 WL 4252062, at *7 (S.D.N.Y. Sept. 20, 2024) (finding no inference of discriminatory intent where defendant university hosted events, brochures, and other materials on race and religion in a neutral and non-derogatory way).

The Amended Complaint on its face fails to allege facts to support a plausible inference of intentional discrimination against Plaintiff. As a result, Plaintiff cannot make out a Title II, § 1981, or § 1982 claim for intentional race discrimination.

II.    Count 2: Title VI of the Civil Rights Act (42 U.S.C. § 2000d *et seq.*)

Plaintiff next asserts violations of Title VI of the Civil Rights Act, 42 U.S.C § 2000d *et seq.*, for race discrimination against Defendants.

Title VI[6] "prohibits a recipient of federal funds from discriminating on the basis of race, color, or national origin." *Zeno*, 702 F.3d at 664. The statute only prohibits intentional discrimination. *Id.*; *see also Alexander v. Sandoval*, 532 U.S. 275, 280 (2001) ("[I]t is similarly beyond dispute . . . that [42 U.S.C. § 2000d] prohibits only intentional discrimination."). Consequently, "[a] substantive violation of Title VI occurs when '(1) . . . there is racial or [other prohibited] discrimination and (2) the entity engaging in discrimination is receiving federal

---

[6] Title VI provides in full: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

financial assistance.'" *Rafi v. Yale Univ. Sch. of Med.*, No. 3:14-CV-1582 (VAB), 2017 WL 3205548, at *11 (D. Conn. July 27, 2017) (quoting *Baker v. Bd. of Regents*, 991 F.2d 628, 631 (10th Cir. 1993)); *see also Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 300 (D. Conn. 2009).

As Plaintiff's Title VI claim also requires proof of intentional discrimination, her Title VI claim fails for the same reason that her Title II, § 1981, and § 1982 claims fail: her allegations about intentional racial discrimination are entirely conclusory. *See supra* at pp. 8–10. Like discrimination claims under Title II, "Title VI . . . require[s] that intentional discrimination be alleged in a non-conclusory fashion," *Clyburn v. Shields*, 33 F. App'x 552, 555 (2d Cir. 2002); as discussed above, Plaintiff's allegations are insufficient to clear that hurdle. *See Idlibi v. New Britain Jud. Dist.*, No. 3:22-CV-1374 (JAM), 2023 WL 6216810, at *4 (D. Conn. Sept. 25, 2023) (dismissing Title VI claim where plaintiff failed to allege non-conclusory facts to support his claim of intentional discrimination).

Defendants also argue that Plaintiff has failed to allege in a non-conclusory manner that either NNI or Downtown are "program[s] or activit[ies] receiving Federal financial assistance," 42 U.S.C. § 2000d. Again, the Court agrees. "Receipt of federal funds is a required element of every Title VI claim, and merely alleging, without additional information, that an entity receives such funds therefore amounts to no more than a threadbare recital of an element of a cause of action." *Joy v. Crime Victims Treatment Ctr.*, No. 23-CV-11177 (MMG), 2025 WL 326521, at *7 (S.D.N.Y. Jan. 29, 2025) (citation, quotations, and alterations omitted). Here, Plaintiff offers only that NNI and Downtown "receive[] state and federal funding, participate[] in state and federal programs and activities, and [are] heavily controlled by the government." Am. Compl. ¶¶ 5–6.

There are no other allegations regarding the purpose, nature, or sources of federal funding. *Joy*, 2025 WL 326521, at *7 (collecting cases).

As such, Plaintiff has failed to allege a plausible Title VI claim.

III.    Counts 3 and 4: Fair Housing Act (42 U.S.C. § 3601 *et seq.*)

In Counts 3 and 4, Plaintiff asserts claims under the FHA for discrimination and retaliation, respectively. Am. Compl. ¶¶ 62–67. The FHA prohibits a person or entity from "mak[ing] unavailable or deny[ing] a dwelling to any person because of race." 42 U.S.C. § 3604(a). The FHA prohibits race discrimination in, among other things, "the terms, conditions, or privileges" of sales or rentals. *Id.* § 3604(b). As relevant here, "[a] plaintiff may establish discrimination under the FHA under one of three theories: disparate treatment, disparate impact," or hostile housing environment. *Hevner v. Vill. E. Towers, Inc.*, No. 06-CV-3983 (GBD), 2011 WL 666340, at *2 (S.D.N.Y. Feb. 7, 2011), *aff'd*, 471 F. App'x 73 (2d Cir. 2012); *Favourite*, 381 F. Supp. 3d at 277. For many of the same reasons already discussed, Plaintiff's FHA claims fail under any of these theories.

A.    Disparate Treatment

Because Plaintiff has failed to allege facts to support even a minimal inference of intentional discrimination, *see supra* at pp. 8–10, Plaintiff cannot make out a claim for disparate treatment under the FHA. "FHA disparate treatment claims are [also] analyzed under the *McDonell Douglas* burden-shifting framework . . . ." *Haber v. ASN 50th St. LLC*, 847 F. Supp. 2d 578, 585 (S.D.N.Y. 2012). Thus, Plaintiff has the burden of "specifically alleg[ing] the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Raymond*, 317 F. Supp. 3d at 761 (quoting *Yusuf*, 35 F.3d at 713). As previously explained, Plaintiff's allegations fall woefully short of the threshold

to plausibly allege intentional discrimination. *See supra* at pp. 8–10. The Amended Complaint is devoid of any mentions of race except for Plaintiff identifying herself as African American and the stray unspecified comment by Ross about a "black business." Am. Compl. ¶ 36. This stray comment alone is insufficient to plausibly state a claim for disparate treatment under the FHA.

Further, Plaintiff does not identify *any* similarly situated comparators who are or have been treated differently than Plaintiff from which disparate treatment might be shown or an inference of discrimination might be drawn. *See, e.g.*, *Katz v. N.Y.C. Hous. Preservation & Dev.*, No. 1:21-CV-2933 (JLR), 2024 WL 664711, at *6 (S.D.N.Y. Feb. 16, 2024) (collecting cases) (dismissing FHA disparate treatment for failure to allege a similarly situated comparator); *Moody v. Related Cos.*, 620 F. Supp. 3d 51, 55–56 (S.D.N.Y. 2022) (same).

B. <u>Disparate Impact</u>

Plaintiff also fails to plausibly state a disparate impact housing discrimination claim. Section 3604(a) provides for disparate impact liability under the FHA. *Conn. Fair Hous. Ctr. v. CoreLogic Rental Prop. Sols., LLC*, 478 F. Supp. 3d 259, 286 (D. Conn. 2020) (citing *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519 (2015)). "A disparate impact analysis examines a facially-neutral policy or practice . . . for its differential impact or effect on a particular group." *Fortune Soc'y v. Sandcastle Towers Hous. Dev. Fund Corp.*, 388 F. Supp. 3d 145, 172 (E.D.N.Y. 2019) (quotations omitted).

> At the pleading stage, a plaintiff must allege facts from which the Court can plausibly infer that (1) "the challenged policy or practice is arbitrary, artificial, and unnecessary to achieve a valid interest or legitimate objective such as a practical business, profit, policy consideration, or requirement of law;" (2) "the challenged policy or practice has a disproportionately adverse effect on members of a protected class;" (3) "there is a robust causal link between the challenged policy or practice and the adverse effect on members of a protected class, meaning that the specific policy or practice is the direct cause of the discriminatory effect;" (4) "the alleged disparity caused by the policy or practice is significant; and" (5) "there is a direct relation between the injury asserted and the injurious conduct alleged."

*Moody*, 620 F. Supp. 3d at 57 (quoting 24 C.F.R. § 100.500(b)(1)–(5)).  Here, not only has Plaintiff failed to show a "discriminatory effect" of Defendants' actions, as required, *Conn. Fair Hous. Ctr.*, 478 F. Supp. 3d at 287 (quoting 24 C.F.R. § 100.500(c)(1)), she has also failed to allege any facially neutral policy or practice adopted by Defendants that would disproportionately impact a minority group.  In other words, there are no allegations (not even conclusory allegations) that any policy enacted by the Defendants had an adverse or disproportionate impact on African American tenants when compared to similarly situated Caucasian tenants.  *See Moody*, 620 F. Supp. 3d at 58.  It is self-evident, then, that Plaintiff has not plausibly alleged a disparate impact claim.

C.  Hostile Housing Environment

Plaintiff's allegations also cannot make out a hostile housing environment claim.  "Courts in this Circuit have construed Section 3604(b) of the FHA to prohibit the creation of a 'hostile environment' by individuals who have control or authority over the 'terms, conditions, or privileges of sale or rental of a dwelling,' similar to the prohibition imposed by Title VII against the creation of a hostile work environment."  *Favourite*, 381 F. Supp. 3d at 277 (quoting *Cain v. Rambert*, No. 13-CV-5807 (MKB), 2014 WL 2440596, at *4 (E.D.N.Y. May 30, 2014)).  A plaintiff asserting a hostile housing environment claim must establish "(1) that she was subjected to harassment that was sufficiently pervasive and severe so as to create a hostile housing environment; (2) that the harassment was because of the plaintiff's membership in a protected class; and (3) that a basis exists for imputing the allegedly harassing conduct to the landlord." *A.L.M. ex rel. Moore v. Bd. of Managers of Vireum Schoolhouse Condo.*, No. 19-2771, 2021 WL 5121137, at *1 (2d Cir. Nov. 4, 2021) (summary order).  As discussed above, Plaintiff has not plausibly alleged that Defendants were motivated by discriminatory intent.  *See supra* at pp. 8–10. As such, her hostile housing environment claim also fails.  *Mohamed v. McLaurin*, 390 F. Supp.

3d 520, 555 (D. Vt. 2019) ("Where there is an absence of discriminatory intent, courts routinely reject hostile housing environment claims under the FHA.") (collecting cases); *see also Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 73–74 (2d Cir. 2021) (affirming Rule 12(b)(6) dismissal of FHA complaint where the complaint "lacks even minimal support for the proposition that the . . . Defendants were motivated by discriminatory intent" (quotations omitted)).

Nor has Plaintiff plausibly alleged that she was subjected to harassment that was sufficiently "pervasive and severe" so as to make out a hostile housing environment claim. Viewing the allegations in the light most favorable to Plaintiff, the allegedly harassing actions include multiple visits to the Property by Ross, veiled threats of legal action, multiple letter notices, and the initiation of eviction proceedings for nonpayment.  Plaintiff is clearly involved in protracted summary process proceedings with Defendants, but this alone does not evince a "long-lasting pattern of highly offensive behavior."  *Mohamed*, 390 F. Supp. 3d at 549 (quoting *Honce v. Vigil*, 1 F.3d 1085, 1090 (10th Cir. 1993)); *see also id.* ("Casual or isolated manifestations of a discriminatory environment may not raise a cause of action." (quoting *Honce*, 1 F.3d at 1090)). Thus, Plaintiff has not plausibly pled a hostile housing environment claim under the FHA.

D.  Retaliation

Although Plaintiff alleges that Defendants subjected her to "coercion, intimidation, threat[s], and interference" in violation of the FHA's prohibition of retaliation, her allegations are insufficient to make out a claim for retaliation.  Section 3617 of Title 42 "broadly prohibits various forms of retaliation, by making it unlawful 'to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right granted or protected by [the FHA].'"  *Gilead Cmty. Servs., Inc. v. Town of Cromwell*, 112 F.4th 93, 99 (2d Cir. 2024) (quoting 42 U.S.C. § 3617).  "Protected activity under the FHA refers

to action taken to protest or oppose statutorily prohibited discrimination, *i.e.*, retaliating because a person made a complaint, testified, assisted, or participated in any manner in a proceeding under the FHA." *Avila v. Acacia Network, Inc.*, No. 1:24-CV-884 (LTS), 2024 WL 1659456, at *5 (S.D.N.Y. Apr. 15, 2024) (quotations omitted). "A plaintiff alleging retaliation under [§ 3617] must show that a defendant took adverse action against the plaintiff, and a causal connection exists between the protected activity and the adverse action, which is satisfied when retaliatory motive played a part in causing the adverse action." *Gilead Cmty. Servs.*, 112 F.4th at 99 (emphasis and quotations omitted).

Plaintiff alleges that the Defendants retaliated against her on October 3, 2023, and again on December 20, 2023, when they served her with an "invalid and defective notice to quit for nonpayment of rent." Am. Compl. ¶¶ 32, 43. She also identifies the summary process action filed by Defendant against her on December 26, 2023, as an act of retaliation.[7] *Id.* ¶ 48. Plaintiff claims that the Defendants were attempting to intimidate her into paying rent that she claims she did not owe, and that they were "retaliating against plaintiff for trying to enforce rights and a contract, and making complaints." *Id.* ¶ 32. Again, whatever complaints she references are unspecified in terms of when they were made, to whom they were made, the nature of the complaints, or the number of complaints. And conclusory allegations of generally "making complaints" about housing conditions is not sufficient to show that a plaintiff engaged in a protected activity under the FHA. *See, e.g.*, *Jones v. Volunteers of Am. Greater N.Y.*, No. 1:20-CV-5581 (MKV), 2022 WL 768681, at *10 (S.D.N.Y. Mar. 14, 2022) (finding that "the Court cannot credit the vague and conclusory

---

[7] The Amended Complaint also alleges that "[a]fter plaintiff filed a CHRO complaint against BNT, defendants continued to discriminate, interfere with, intimidate, threaten, coerce, and retaliate against plaintiff." Am. Compl. ¶ 52. However, there are no details as to when Plaintiff filed the CHRO complaint, or how Defendants allegedly retaliated against her. Further, according to Plaintiff, the CHRO complaint was allegedly filed against BNT, who is not a party to this action. Thus, this vague and conclusory allegation cannot make out an FHA retaliation claim.

allegation" that the plaintiff made complaints to unspecified parties and agencies).  Nor has Plaintiff adequately alleged any facts to support a causal connection between her unspecified "complaints" and the later eviction notices and actions.  *See Jenkins v. Gradzki*, No. 23-CV-7103 (DG) (CLP), 2024 WL 5716604, at *3 (E.D.N.Y. Feb. 8, 2024); *see also King v. Lipsius-Gembola*, No. 22-CV-259 (JLS), 2023 WL 9470280, at *4 (W.D.N.Y. May 30, 2023).  Plaintiff cannot make out a retaliation claim with such vague and conclusory allegations.  Therefore, Counts 3 and 4 are dismissed for failure to state a claim under the FHA.

IV.   Count 6: Section 1983

In Count 6, Plaintiff asserts a violation of her constitutional rights in violation of 42 U.S.C. § 1983.  The Amended Complaint does not specify which constitutional right was violated, but interpreting her pleading liberally, the Court assumes that she is asserting a race discrimination claim under the Equal Protection Clause.

"Section 1983[8] gives a cause of action to any person who has been deprived of his constitutional rights, privileges or immunities under color of state law."  *Powell v. Workmen's Comp. Bd. of State of N.Y.*, 327 F.2d 131, 135 (2d Cir. 1964).  The Fourteenth Amendment to the United States Constitution declares that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.

Claims brought alleging violations of an individual's constitutional rights, whether under 42 U.S.C. § 1983 or the Constitution itself, may only be brought against state actors.  *See Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005) ("Because the United States

---

[8] Section 1983 provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." (internal quotation marks omitted)); *see also* 42 U.S.C. § 1983 (imposing civil liability on anyone "who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws"). Accordingly, a private actor may not be held liable under § 1983 unless it was acting as an instrument of the state. *See, e.g.*, *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) (citations omitted). "For the purposes of section 1983, the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity has been delegated a public function by the [s]tate, ('the public function test')." *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)).

"The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)) (citations omitted). "[A] private entity does not become a state actor for purposes of § 1983 merely on the basis of 'the private entity's creation, funding, licensing, or regulation by the government.'" *Id.* (quoting *Cranley v. Nat'l Life Ins. Co. of Vt.*, 318 U.S. 105, 112 (2d Cir. 2003)). Further, "[i]t is not enough . . . for a plaintiff to plead state involvement in 'some activity of the institution alleged to have inflicted injury upon a

plaintiff'; rather, the plaintiff must allege that the state was involved 'with the activity that caused the injury.'" *Sybalski*, 546 F.3d at 257–58 (quoting *Schlein v. Milford Hosp., Inc.*, 561 F.2d 427, 428 (2d Cir. 1977)) (citations omitted) (emphasis omitted); *see also Fabrikant*, 691 F.3d at 207 ("In analyzing whether a private entity acts under color of state law for purposes of § 1983, we begin 'by identifying the specific conduct of which the plaintiff complains,' rather than the general characteristics of the entity." (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999))). The burden is on a plaintiff to demonstrate that a private entity has engaged in state action. *Szekeres v. Schaeffer*, 304 F. Supp. 2d 296, 311 (D. Conn. 2004).

In this case, Plaintiff has failed to meet her burden to plausibly allege that either Defendant was a state actor engaged in state action when they allegedly violated her constitutional rights. The Amended Complaint acknowledges that NNI and Downtown are both private corporate entities, not government agencies. Am. Compl. ¶¶ 5–6 (identifying NNI as a "Connecticut non-stock corporation" and Downtown as a "Connecticut limited partnership"). The only other allegations regarding the Defendants' state involvement are entirely conclusory. The Amended Complaint claims, in a "threadbare recital of an element of a cause of action," *Joy*, 2025 WL 326521, at *7, that "NNI is a government actor that has taken government action, acts in concert with the government, otherwise assumes a government role, [and] shares entwinement and a close nexus with the government." Am. Compl. ¶ 5. And it alleges the same template language for Downtown. *Id.* ¶ 6. "A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Mitchell v. Conn. Region 14 Dist. Probate Ct.*, No. 3:14-CV-630 (JAM), 2015 WL 4094188, at *5 (D. Conn. July 7, 2015) (quoting *Ciambrello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002)). Plaintiff has therefore failed to plausibly allege that the Defendants' actions can "fairly be attributed to the

state" so as to subject them to § 1983 liability.  *See, e.g.*, *Altieri v. Tsopanides*, No. 3:21-CV-1224 (MPS), 2022 WL 1912851, at *3 (D. Conn. June 3, 2022) (dismissing § 1983 complaint against non-state actor because of conclusory allegations that defendant "acted jointly and in concert" with the state); *Bernier v. Travelers Prop. Cas. Ins. Co.*, No. 3:24-CV-1061 (VAB), 2025 WL 2379310, at *17 (D. Conn. Aug. 15, 2025) (dismissing § 1983 complaint against non-state actor where "Plaintiffs do not point to a single communication or joint effort between [defendant] and any state actor that can properly allege" entwinement with the state).

Furthermore, even if Plaintiff was somehow able to plausibly allege that Defendants were "state actors," her § 1983 claim would still fundamentally fail because she has not plausibly alleged that Defendants' actions were racially motivated.  "[C]laims of race-based discrimination under the Equal Protection Clause . . . require that intentional discrimination be alleged in a non-conclusory fashion."  *Clyburn*, 33 F. App'x at 555 (citing *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982)).  As previously explained, Plaintiff has fallen well short of plausibly alleging that Defendants' actions were motivated by racial animus.  *See supra* at pp. 8–10; *see also Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 68 (2d Cir. 2015) (affirming dismissal of equal protection claim where plaintiff "fail[ed] to allege in other than conclusory fashion any specific instances of discrimination with respect to any individual plaintiff or others similarly situated"); *Gainey v. Pagel*, No. 3:21-CV-43 (SRU), 2021 WL 2400256, at * (D. Conn. June 11, 2021) (dismissing equal protection claim where plaintiff only provided conclusory allegation that defendants' actions were racially motivated).

For all of these reasons, Plaintiff's § 1983 claim against both Defendants must be dismissed.

V.    <u>Remaining State Law Claims</u>

With the federal claims dismissed, the Court turns to the state-law claims.  Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a claim or claims if one of four enumerated circumstances arise.  Specifically, § 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 446 (2d Cir. 1998).  Section 1367(c) is permissive, not mandatory.  *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011).  Where any one of the four enumerated bases for declining supplemental jurisdiction is found to apply, as is the case here,[9] the Court may consider a number of factors when deciding whether to decline jurisdiction.  *Id.*

"When all federal claims are dismissed, district courts should generally decline to exercise supplemental jurisdiction over pendent state law claims."  *Collins v. Feder*, No. 3:23-CV-71 (KAD), 2024 WL 5058435, at *7 (D. Conn. Dec. 10, 2024).  Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.[10]  Those claims are dismissed without prejudice.

---

[9] The Second Circuit has also held that before a district court can decline to exercise supplemental jurisdiction, one of the four enumerated bases *must* be present.  *Shahriar*, 659 F.3d at 245.

[10] Declining supplemental jurisdiction is particularly appropriate here where there are unanswered questions of state law at play.  For example, in Count 9, Plaintiff appears to assert a claim under the Connecticut Housing Finance Authority Act (CHFAA), Conn. Gen. Stat. § 8-265c.  Am. Compl. ¶¶ 80–82.  Defendants argue that the CHFAA only applies to the Connecticut Housing Finance Authority and not to private owners like Defendants, and further that the CHFAA creates no private cause of action.  NNI Mem. of Law at 9; Downtown Mem. of Law at 11.  This is apparently an open question of state law.  It is therefore particularly appropriate for the Court to decline supplemental jurisdiction.  *See* 28 U.S.C. § 1367(c)(1).

**Conclusion**

As explained above, Defendants' motions to dismiss (ECF Nos. 35, 62) are GRANTED in part.  Plaintiff's federal claims (Counts 1, 2, 3, 4, 5, and 6) are dismissed with prejudice.  Plaintiff's state-law claims (Counts 7, 8, 9, 10, 11, and 12) are dismissed without prejudice.

**SO ORDERED** at Bridgeport, Connecticut, this 10th day of September, 2025.

_/s/ Kari A. Dooley_____
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE